ANHEUSER-BUSCH, INC., Appellant, v ROBERT ABRAMS, as Attorney-General of the State of New York, Respondent.

In the Matter of SUBPOENAS DUCES TECUM SERVED BY THE ATTORNEY-GENERAL OF THE STATE OF NEW YORK UPON THE NEW YORK STATE BEER WHOLESALERS ASSOCIATION, INC., AND INDIVIDUAL BEER WHOLESALERS. NEW YORK STATE BEER WHOLESALERS ASSOCIATION AND CERTAIN INDIVIDUAL BEER WHOLESALERS, Appellant, ATTORNEY-GENERAL OF THE STATE OF NEW YORK, Respondent.

In the Matter of G. HEILEMAN BREWING COMPANY, INC., Appellant, v ROBERT ABRAMS, as Attorney-General of the State of New York, Respondent.

In the Matter of MILLER BREWING COMPANY, Appellant, v ROBERT ABRAMS, as Attorney-General of the State of New York, Respondent.

In the Matter of STROH BREWERY COMPANY, Appellant, v ROBERT ABRAMS, as Attorney-General of the State of New York, Respondent.

In the Matter of FORBEE BROS. CORPORATION et al., Appellants, v ROBERT ABRAMS, as Attorney-General of the State of New York, Respondent.

First Department, March 5, 1987

## APPEARANCES OF COUNSEL

*Terrence C. Sheehy* of counsel *(Roxann E. Henry, Richard J. Garcia, Stephen M. Axinn, William C. Pelster* and *David L. Elkind* with him on the brief; *Howrey & Simon* and *Skadden, Arps, Slate, Meagher & Flom,* attorneys), for Anheuser-Busch, Inc., appellant.

*Matthew Feigenbaum* of counsel *(Stein, Davidoff & Malito,* attorneys), for New York State Beer Wholesalers Association and certain individual beer wholesalers, appellant.

*Gary Hoppe* of counsel *(David E. Beckwith* and *Michael Fischer* with him on the brief; *Foley & Lardner* and *Olwine, Connelly, Chase, O'Donnell & Weyher,* attorneys), for G. Heileman Brewing Company, Inc., appellant.

*Thomas H. Milch* of counsel *(Jerome I. Chapman* and *Joce-*

lyn F. Samuels, and *David Rees Davies* and *Adeeb Fadil* with him on the brief; *Arnold & Porter* and *Hunton & Williams,* attorneys), for Miller Brewing Company, appellant.

*Hugh Latimer* of counsel *(Robert A. Skitol* and *Richard B. Nash, Jr.,* and *Henry B. Gutman* and *J. Douglas Richards* with him on the brief; *Wald, Harkrader & Ross* and *O'Sullivan Graev & Karabell,* attorneys), for Stroh Brewery Company, appellant.

*Eugene T. D'Ablemont (Robert S. Getman* with him on the brief; *Kelley Drye & Warren,* attorneys), for Forbee Bros. Corporation and others, appellants.

*Alan Pfeffer* of counsel *(Katherine Frank* and *Elizabeth O'Neill* with him on the brief); *Robert Abrams, Attorney-General,* respondent *pro se.*

### OPINION OF THE COURT

WALLACH, J.

The main issue on this appeal concerns the authority of the Attorney-General to investigate vertically imposed exclusive territorial distributorships under the State's antitrust law, the Donnelly Act (General Business Law art 22). The context is provided by six separate applications to quash subpoenaes that were served by the Attorney-General in connection with an investigation into marketing practices prevalent in the beer industry. One application was brought by each of the four brewers served with a subpoena. According to the Attorney-General, these are the four largest brewers in the country, their aggregate market share being 76.6%, with that of the two largest being 54.7%. The fifth application was brought on behalf of three of the more than 100 beer wholesalers served with subpoenas and the sixth, by an association of wholesalers. The subpoenas served on the brewers are different from those served on the wholesalers and the association, and those served on the latter are different from each other. However, the variations in the subpoenas are not the subject of vigorous argument, all sides proceeding instead on the understanding that the primary, though not exclusive, purpose of all of the subpoenas is to obtain information pertinent to a rule of reason analysis of exclusive territorial distributorships in the beer industry.

It appears that in recent years it has become a virtually industry-wide practice to market beer to retail outlets through

wholesalers with exclusive territorial rights secured through so-called franchise agreements. Although a sample franchise agreement is not included in any of the six records under review, it is described by the Attorney-General as prohibiting the brewer from selling inside of the franchised territory to persons other than the franchised wholesaler, and as prohibiting the franchised wholesaler from selling to persons outside of the franchised territory or to persons inside of the franchised territory who would resell, or "tranship", to persons outside of the franchised territory. The effect of such restrictions is to eliminate intrabrand competition within each area designated as a territory.

The Attorney-General argues that the restraints on trade imposed by these exclusive distributorship agreements may be unreasonable. He believes that they could be resulting in higher prices to the consumer, and that they tend to encourage other more blatantly anticompetitive practices, in particular, tie-ins. Indeed, the Attorney-General states that he has received complaints from retailers that the sale of beer is being tied by wholesalers to the purchase of other services and products offered by them, including the recycling of used bottles and unpopular brands of beer. He also argues that the degree of concentration in the beer industry is so high that, under guidelines established by the United States Department of Justice, investigation of this "tightly knit oligopoly" would be warranted under the Federal Sherman Act. All sides agree that a restraint of the type at issue herein is subject to rule of reason analysis under the Sherman Act *(Continental T.V. v GTE Sylvania,* 433 US 36). Yet, while arguing that the Donnelly Act should be construed like the Sherman Act when it comes to vertical restraints on distribution, the Attorney-General acknowledges that Federal interpretation of the Sherman Act is not controlling of the interpretation of the Donnelly Act *(People v Roth,* 52 NY2d 440), and is to be given no weight at all should there be State law precedent with respect to the point in controversy to the contrary *(Marsich v Eastman Kodak Co.,* 244 App Div 295, 296-297, *affd* 269 NY 621)

According to the Attorney-General, "vertical" restraints are "agreements between non-competitors at different levels of distribution such as between manufacturers and distributors". While not necessarily illegal, most such restraints are subject to "rule of reason analysis", which is to say that they may be found illegal "if, on balance, their anti-competitive effects outweigh their pro-competitive benefits". To be contrasted are

"horizontal" restraints, defined by the Attorney-General as "agreements among competitors", most of which, he states, are "unreasonable per se", i.e., illegal as a matter of law without regard to their effect on competition as ascertained through rule of reason analysis. While the Attorney-General states that his subpoenas seek information pertinent to certain claimed horizontal practices among wholesalers, including market division, their main purpose, he asserts, is to facilitate a rule of reason analysis of purely vertical restraints on the wholesale distribution of beer.

Petitioners dispute that vertical restraints are generally subject to rule of reason analysis under the Donnelly Act. Some go so far as to say that all vertical restraints are "legal per se", i.e., not within the purview of the Donnelly Act regardless of their effect on competition. Others of the petitioners do not go that far, but all contend that exclusive territorial distributorships are legal per se if vertically allocated. And, petitioners argue, such exclusive distributorships being legal per se, the Attorney-General is without authority under the Donnelly Act to investigate them (citing, *Matter of Levin v Murawski,* 59 NY2d 35; *Myerson v Lentini Bros. Moving & Stor. Co.,* 33 NY2d 250; *Matter of A'Hearn v Committee on Unlawful Practice of Law,* 23 NY2d 916; *Matter of Kates v Lefkowitz,* 28 Misc 2d 210).

While not conceding that possible violations of the Donnelly Act constitute the only source of his authority to investigate anticompetitive practices, the Attorney-General does squarely challenge petitioners' contention that purely vertical arrangements setting up exclusive territorial distributorships are legal per se under the Donnelly Act. Thereby, the main issue raised on this appeal is framed.

We agree with petitioners that the weight of authority, such as it is, holds vertically arranged exclusive territorial distributorships to be legal under the Donnelly Act regardless of their effect on competition. The main case relied upon by petitioners for this proposition, *Dawn to Dusk v Brunckhorst Co.* (23 AD2d 780, 781), dismissed a complaint challenging a vertically imposed exclusive distributorship in very plain, emphatic language: "An agreement or arrangement among parties in a vertical relationship, which restricts the territory within which the buyer * * * may resell the goods * * * does not violate [the Donnelly Act] * * * Nor is it violative of the statute because it * * * prohibits the distribution of the goods to any dealers who would resell the goods to plaintiff". An-

other case relied upon by petitioners, and cited in *Dawn to Dusk, Revlon Prods. Corp. v Bernstein* (204 Misc 80, *affd* 285 App Div 1139) is even more categorical in recognizing the legality of vertically arranged exclusive territorial distributorships: "Restraint of trade is a phrase of art in that it is not every contract which can be found to put limits on the flow of merchandise or the prerogatives of buyer or seller that comes within its restriction. In fact, in this very case it is conceded that the restriction embraced in the provision that the jobber may not sell outside his allotted territory does not restrain trade. This concession, made necessary by the established law, does not mean that such a clause does not restrict the jobber and limit him in the disposal of the goods he has bought. It does, but the limitation is of a kind which is recognized not to come within the technical meaning of the words 'restraint of trade' ". (204 Misc, at 81.)

The Attorney-General distinguishes these cases on the ground that the complaining party in each was not in a competitive relationship to any of the defendants, and that there was thus no "competitive injury" on which to base an antitrust award. We see nothing in these cases to suggest, however, that the plaintiffs' standing, or lack thereof, to assert a Donnelly Act violation was viewed as a critical circumstance, or even considered.

The most important authority relied upon by the Attorney-General is *Alexander's Dept. Stores v Ohrbach's Inc.* (266 App Div 535). There, the court (with two Justices dissenting on opn of Shientag, J., at Special Term [180 Misc 18]), enjoined a vertical arrangement that cut off the plaintiff's supply of a product from the manufacturer and thereby effectively eliminated the plaintiff as a competitor of the exclusive distributor in the retailing of that product. Various circumstances were cited to support the injunction, the most important of which was the horizontal origin of the arrangement *(see, Rothschild v World-Wide Autos. Corp.,* 18 NY2d 982 [Burke, J., dissenting at 985-986]). The court specifically found that the manufacturer's refusal to sell to the plaintiff was not a decision "freely" made, but rather the result of coercive pressure exerted by the plaintiff's competitor who, using its "superior economic buying power", and meaning to eliminate its competition "one by one", prevailed upon the manufacturer to give it an exclusive.

Horizontal pressures of a similar nature appear to have been involved in all of the cases relied upon by the Attorney-

General, although most of the appellate authorities cited are memoranda decisions so sparse that it is difficult to say what their rationale is *(Duchen v Milliken Woolens,* 19 AD2d 521; *Rose & Co. v Unity Stove Co.,* 3 AD2d 829, *modfg* 3 Misc 2d 939; *Schlottman Agency v Aetna Cas. & Sur. Co.,* 70 AD2d 1041). Here, however, the absence of such horizontal pressures is assumed by the Attorney-General, at least with respect to those of his questions in the subpoenas that seek information relevant to a rule of reason analysis. Such assumption is implicit in the Attorney-General's argument that horizontal arrangements, being illegal per se, do not have to be scrutinized under the rule of reason.

We hold that purely vertical arrangements allocating exclusive territorial distributorships are not within the ambit of the Donnelly Act. This does not end the argument, however. The Attorney-General contends that even if exclusive territorial distributorships are legal per se, his power to investigate anticompetitive practices goes beyond possible violations of the Donnelly Act. He finds this authority in section 343 of the Donnelly Act, which authorizes him to investigate not only "any act or practice by this article prohibited or declared to be illegal", but also "any plan, scheme, agreement or combination of the nature described herein", or indeed, "whenever he believes it to be in the public interest that an investigation be made". Clearly such language, the Attorney-General argues, encompasses restraints that are actionable under the Sherman Act, such as the instant one.

Whatever the extent of the Attorney-General's investigatory authority under the Donnelly Act, we do not agree that it includes vertically imposed territorial restraints on distribution. In reaching this conclusion, we are heavily influenced by the fact that this is apparently the first time such an investigation has been undertaken by the State in the 90-year history of the Donnelly Act. At least, we are not advised otherwise by the Attorney-General. Perhaps the beer industry is unique; perhaps economic conditions and informed opinion on the subject of intrastate competition are different today than in the past. Yet, we would venture to say that practices comparable to those sought to be investigated herein are not so rare that they have never before come to the attention of the State. This long history of inaction with respect to vertically imposed territorial distributorships strongly suggests an implied interpretation of the statute as not extending thereto *(see, State of New York v Mobil Oil Corp.,* 38 NY2d 460, 465).

We also take note, and give some weight to section 342-b, where the Legislature has shown that when it means to refer to the Federal antitrust laws, it does so explicitly. We give no weight, however, to the Legislature's rejection of recent repeated efforts by the Attorney-General to have the Donnelly Act amended so as to make exclusive territorial distributorships in the beer industry expressly illegal. It is one thing to say that such inaction indicates the Legislature's acceptance of such distributorships as not illegal per se; it is quite another to say, as petitioners do, that such inaction indicates legislative acceptance of such distributorships as legal per se.

The subpoenas should be quashed in their entirety without prejudice to reissuance. Notwithstanding that the subpoenas contain some questions bearing upon possible horizontal restraints and tie-ins, we are not about to prune these lengthy, facially complex documents on our own without assistance from the parties. If the Attorney-General wishes to pursue his investigation into these horizontal arrangements and tie-ins, it would be better to issue fresh subpoenas focused on those subjects.

Accordingly, the six judgments of the Supreme Court, New York County (Hortense Gabel, J.), entered July 10, 1986, which denied petitioners' applications to quash subpoenas served upon them by respondent, should be reversed, on the law, and the applications to quash granted, without costs.

MURPHY, P. J., ROSENBERGER and ELLERIN JJ., concur.

Six separate judgments (denominated orders), Supreme Court, New York County, all entered on July 10, 1986, unanimously reversed, on the law, and the applications to quash are granted, without costs and without disbursements.