■ YAN'S VIDEO, INC., et al., Respondents, v HONG KONG TV VIDEO PROGRAMS, INC., et al., Appellants.—Appeal from order of the Supreme Court, New York County (Irma Vidal Santaella, J.), entered on or about March 18, 1987, which granted plaintiffs' motion for a preliminary injunction on the condition that each plaintiff post an undertaking in the amount of $100,000, is dismissed as superseded by the appeal from the order of April 16, 1987, without costs or disbursements.

Order of the Supreme Court, New York County (Irma Vidal

Santaella, J.), entered on April 16, 1987, which denied the motion by defendant United East Enterprises of New York to vacate the order of March 18, 1987 and granted plaintiffs' cross motion to modify said order to the extent of reducing the undertaking to $20,000 for each plaintiff, is reversed on the law, the facts and in the exercise of discretion, defendant's motion to vacate the order of March 18, 1987 is granted and plaintiffs' cross motion to continue in effect the preliminary injunction, but at a lower bond, is denied, with costs and disbursements.

Appeal from the order of the Supreme Court, New York County (Irma Vidal Santaella, J.), entered on May 28, 1987, is dismissed as academic in view of this court's determination that the preliminary injunction was improperly granted, without costs or disbursements.

Each of the plaintiffs herein is a retail establishment dealing in the sale and rental of Chinese-language videotapes. Defendant Hong Kong TV Video Programs, Inc. (HK-TVP) is a San Francisco-based company which holds the exclusive American rights to the sublicensing of a certain popular brand of tapes produced in Hong Kong by Television Broadcast Ltd. and licensed for international distribution by Hong Kong Television Broadcast International, Ltd. Beginning in 1981, plaintiffs contracted with defendant HK-TVP to distribute the tapes in question. The practice in the past had been that each year, after HK-TVP learned that its bid for the licensing rights had been renewed by Hong Kong Television Broadcast International, it would, in turn, offer to renew plaintiffs' sublicensing rights. For a number of years, the agreements proffered by HK-TVP have not contained automatic renewal provisions but have, instead, simply set forth HK-TVP's intention to negotiate in good faith a renewal "upon terms and conditions to be negotiated." The sublicenses that expired in November of 1986 were individually negotiated and signed by each of the store owners. However, prior thereto, the retailers involved in this case had retained one Po Yuen, Esq., who had previously represented some of them and was thoroughly familiar with the Chinatown videotape business, for the purpose of arranging a single sublicense for them. The endeavor failed, and plaintiffs were compelled to settle for separate, although substantially similar, contracts.

A number of the businessmen who had abortively attempted to work together in 1985 encountered greater success the following year when, again assisted by Po Yuen, they contacted Hong Kong Television Broadcast International directly

in an effort to supplant HK-TVP as exclusive American licensee. Although they did not achieve their objective, they thereafter formed defendant United East Enterprises, with Po Yuen invited to become a shareholder and president, and managed to gain the New York licensing rights by contractual transfer from HK-TVP to United East Enterprises. Consequently, when plaintiffs' agreements with HK-TVP expired in late 1986, they were forced to bargain with United East. In that regard, they found United East's price demands unacceptable and were offended by the fact that Po Yuen, their former attorney, now represented United East. Plaintiffs declined to enter into sublicensing agreements with United East, and the instant action ensued.

In their complaint, plaintiffs allege that defendant HK-TVP breached the 1985-1986 sublicensing agreements by failing and refusing to negotiate renewals for the period beginning December 1, 1986 and that defendant United East induced this breach of contract. They also claim that defendants' conduct was in violation of the Donnelly Act (General Business Law § 340). Accordingly, plaintiffs sought and obtained a temporary order restraining and enjoining defendants, pending the hearing and determination of the motion, from "interfering with plaintiffs' peaceful possession, quiet enjoyment and beneficial use of their business and premises, including the public rental of Hong Kong TVP programs" and from "taking any steps, including but not limited to the seizure or erasure of video tapes, which interfere with plaintiffs' continued possession, use and control over Hong Kong TVP programs, catalogues, advertising materials and all other materials previously delivered to plaintiffs by defendant HKTVP". The order did not mandate that HK-TVP continue to supply plaintiffs with new tapes.

Plaintiffs subsequently moved for a preliminary injunction which was granted by the Supreme Court following extensive hearings in February of 1987. In addition to directing that HK-TVP refrain from repossessing old tapes for erasure as permitted by virtue of the expiration of the sublicensing agreements, the injunction ordered HK-TVP to furnish plaintiffs with new tapes pursuant to the terms and conditions of their expired sublicenses. The relief was conditioned on the posting of an undertaking by each plaintiff in the amount of $100,000, which bond was later reduced to $20,000 when plaintiffs complained that the initial amount was too high for them to meet. Defendants have appealed the grant of the preliminary injunction.

The law is well settled that in order to procure the drastic remedy of a preliminary injunction, a party must establish a clear likelihood of success on the merits, irreparable injury absent the injunction and a balancing of the equities in its favor *(Chester Civic Improvement Assn. v New York City Tr. Auth.,* 122 AD2d 715, 717; *Bizar v Ohrenstein,* 119 AD2d 445; *Faberge Intl. v Di Pino,* 109 AD2d 235; *Little India Stores v Singh,* 101 AD2d 727). An examination of the record herein reveals that plaintiffs have not made the requisite showing, and, therefore, the preliminary injunction was improperly granted.

Plaintiffs' assertion that they would suffer irreparable injury without injunctive relief is supported merely by the conclusory allegation that they will be out of business within a week if the expired sublicenses are not continued in effect. However, in view of the fact that considerable time has now elapsed since plaintiffs made this assertion and also since any new product was last received from HK-TVP, and there is no indication that plaintiffs' stores are in imminent danger of closing, it appears that any injury suffered by plaintiffs can be adequately compensated by monetary damages.

Even more significantly, plaintiffs have failed to demonstrate that they are likely ultimately to prevail on the merits as they have not shown that they possess an enforceable contractual right. Certainly, the statement in the sublicensing agreements that HK-TVP intends to "negotiate in good faith to renew this agreement for an additional year upon terms and conditions to be negotiated" does not constitute anything more than the sort of "agreement to agree" held to be unenforceable by the Court of Appeals in *Martin Delicatessen v Schumacher* (52 NY2d 105). As the court declared therein, "before the power of law can be invoked to enforce a promise, it must be sufficiently certain and specific so that what was promised can be ascertained" *(supra,* at 109). Regardless of whether or not the past practice has been to renew plaintiffs' sublicensing agreements with HK-TVP each year upon essentially the same terms except for the amount payable to HK-TVP, it is the contractual language which controls. Thus, where, as in the present situation, material terms are left open for future negotiations, the contract is not enforceable. Since there is no showing of a valid enforceable contract between plaintiffs and HK-TVP, the claim of tortious interference with that "contract" is also unsupportable *(see, S & S Hotel Ventures Ltd. Partnership v 777 S.H. Corp.,* 108 AD2d 351, 354). In this connection, it is instructive to note the words

of the Court of Appeals in *Guard-Life Corp. v Parker Hardware Mfg. Corp.* (50 NY2d 183, 190-191): "Where the party claiming injury and the party charged with interference are business competitors—as are the parties to this action—there is presented a frequently encountered, particularized occasion for the application of the general principles as to liability for tortious interference with contract performance. Generalizations must be refined in this context to achieve a balancing of the protection of the interests of the one party in future enjoyment of contract performance and society's interest in respect for the integrity of contractual relationships, on the one hand, and, on the other, the right to freedom of action on the part of the party interfering and society's concern that competition not be unduly hampered. The Restatement [Torts (Second) May 1977] in section 768 undertakes to articulate this balance. It differentiates between interference with an existing contract and interference with a prospective contractual relation (§ 768, Comment *a).* Although his status as a competitor does not protect the interferer from the consequences of his interference with an existing contract, it may excuse him from the consequences of interference with prospective contractual relationships, where the interference is intended at least in part to advance the competing interest of the interferer, no unlawful restraint of trade is effected, and the means employed are not wrongful. 'Wrongful means' include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract *(op. cit.,* § 768, Comment *e;* § 767, Comment *c).* The distinction thus made between the possible liability of a competitor for interference with performance of an existing contract and the more demanding requirements to establish liability for interference with prospective contractual relations reflects a recognition of the difference in the two situations in the relationship of the parties and in the substance and quality of their resulting interests; greater protection is accorded an interest in an existing contract (as to which respect for individual contract rights outweighs the public benefit to be derived from unfettered competition) than to the less substantive, more speculative interest in a prospective relationship (as to which liability will be imposed only on proof of more culpable conduct on the part of the interferer)."

Finally, as to the cause of action claiming violation of New York State's antitrust law, the Donnelly Act (General Busi-

ness Law § 340), it is difficult to perceive how United East's agreement with HK-TVP differs significantly from the type of restraint of trade with respect to which this court recently determined that "the weight of authority, such as it is, holds vertically arranged exclusive territorial distributorships to be legal under the Donnelly Act regardless of their effect on competition" *(Anheuser-Busch, Inc. v Abrams,* 126 AD2d 197, 201).

Although the Supreme Court, in granting injunctive relief to plaintiffs, was greatly influenced by Po Yuen's questionable conduct, the fact is that Mr. Yuen is not being sued individually in this action and whatever claims they may have against him do not affect the merits of their lawsuit against defendants. Concur—Murphy, P. J., Kupferman, Sullivan, Milonas and Smith, JJ.