Joseph ROTH, Plaintiff,

v.

ISOMED, INC., Jay L. Hirshfield, Sidney Horton, & George Trahan, Defendants.

No. 88 Civ. 7418 (RLC).

United States District Court, S.D. New York.

Aug. 23, 1990.

Irving Weissman, New York City, Robinson, Brog, Leinwand, Reich, Genovese & Glick, P.C., White Plains, N.Y. (Richard L. Weingarten, of counsel), for plaintiff.

Susman, Duffy, & Segaloff, P.C., New Haven, Conn. (Susan W. Wolfson, of counsel), Hartman & Craven, New York City (Victor M. Metsch, of counsel), for defendant Isomed, Inc.

## OPINION

ROBERT L. CARTER, District Judge.

Joseph Roth, a citizen and resident of New York, instituted this action against defendants, seeking damages for breach of contract for failure of defendants to deliver to him 350,000 shares of Lansco Resources Ltd. stock in connection with a standby letter of credit provided by plaintiff to the Mizrachi Industrial Bank, Tel Aviv, Israel, for the benefit of Isomed Ltd., an Israeli corporation and a wholly owned subsidiary of defendant Isomed, Inc., a Delaware corporation with its principal place of business in Connecticut.

Jay Hirshfield is president and chief executive officer of Isomed, Inc. and one of its founders. He resides and works in Connecticut. George Trahan, who also resides and works in Connecticut, is secretary and a member of the board of directors of Isomed, Inc. Sidney Horton, who I believe resides and works on the west coast of the United States, is a third member of the board of directors of Isomed, Inc. The goal of the United States corporation was to market in the United States the fruits of the research of Isomed, Ltd.

Plaintiff brought the instant action, initially naming Hirshfield, Trahan and Horton as defendants, as well as Isomed, Inc., demanding judgment in the sum of $253,-500, plus interest and costs. In an opinion dated May 16, 1989, with which familiarity is presumed, the three individual defendants were dismissed from the action because the complaint failed to assert any basis for the exercise of personal jurisdiction over these defendants. *Roth v. Isomed,* No. 88 Civ. 7418 (RLC), slip op. (S.D.N.Y. May 16, 1989).

In its answer, the corporate defendant admitted that it had not delivered the Lansco stock to Joseph, asserted that the agreement to deliver the stock made on June 23, 1988, lacked consideration, and asserted counterclaims against plaintiff on account of the conversion of $158,352.99 of defendant's funds to the use of plaintiff and his family ($141,178.95 received by plaintiff and $17,174.04 retained by Walter Roth, plaintiff's son).

The case was tried to the court on May 14–15, 1990.

### I.

On September 30, 1984, plaintiff entered into an agreement with defendant Isomed, Inc., to increase from $125,000 to $200,000 a standby letter of credit provided by Roth for the benefit of Isomed, Ltd. Defendant agreed to pay interest to plaintiff at the annual rate of 7½% for the period the letter remained in effect. Although the original letter of credit had no termination date, initially and with each extension of the letter plaintiff would give the bank a termination date for the obligation he was assuming.

Joseph Roth, who at the time of trial was 91 years old, has two sons, Robert and Walter. Joseph and Robert are signatories to a consulting agreement between defendant and the Transnational Economic Services ("Transnational"). The address given for Transnational is 891 Park Avenue, New York, New York, Joseph's residence. Initially the agreement called for Transnational to provide consulting services to defendant for a fee of $2,000 per month, plus expenses for a period of two years, beginning January 1, 1985. On January 1, 1987, the agreement was extended for five years, with the monthly fee increased to $3,000.

Walter had resided in Israel for 12 years at the time of trial. He was a director of Isomed, Inc. in 1984 and became its treasurer in 1985. His duty as treasurer was the overall supervision of Isomed's finances. He functioned also as a full-time consultant to Isomed in 1985. He was general and chief financial officer of Isomed, Ltd., the wholly owned Israel subsidiary of Isomed, Inc.

Walter prepared the 1984 agreement when Joseph increased the letter of credit to $200,000 and at Walter's direction the letter of credit was extended from time to time. He prepared the consulting agreement and its extension. Walter provided the consulting services, but involved Joseph and Robert because he was a party to litigation in Israel and wanted to limit his

financial exposure in the event judgment was entered against him in the law suit.

From the time of his initial association with Isomed in or about 1984 until 1988 when he left the organization, Walter Roth was the only Isomed official with a permanent residence in Israel. Hirshfield, Trahan and Horton would come to Israel from time to time on visits, but Walter was in charge of the day to day operations in Tel Aviv. The overall administrative and financial responsibility for the Israeli organization was Walter's. He was authorized to sign checks, and to make payments and expenditures for Isomed. Only towards the end of Walter's association with Isomed during the period of interest in this litigation did Hirshfield begin to spend more time in Israel and become more active in the actual running of the Israeli company.

On August 1, 1986, at the request of defendant, Joseph cabled to defendant's account $50,000 as a loan on terms orally agreed to between Joseph and Walter. The terms were never reduced to writing. In or about 1987, Joseph desired to remove himself from obligation on the letter of credit and requested defendant to secure a replacement for him. On March 26, 1987, he notified the Israeli bank to extend the expiration date for the letter of credit to April 30, 1987. On April 10, 1987, he advised the bank to extend the expiration date to April 29, 1988. On January 1, 1988, Joseph advised defendant that he wanted the $50,000 loan repaid and a replacement of his letter of credit prior to April 29, 1988, the expiration date he had set in his April 10, 1987 communication to the bank.

Defendant undertook efforts to secure a substitute letter of credit without success. On April 7, 1988, Joseph agreed to extend the letter to July 29, 1988. However, by June, 1988, defendant's efforts to secure a substitute letter of credit were still unsuccessful. An agreement was reached on June 23, 1988, signed by Hirshfield as president of both Isomed, Inc., and Isomed, Ltd. In the document below Hirshfield's signature is the legend "CONCURRED TO THIS 27th DAY OF JUNE, 1988," followed by the signatures of Trahan and Horton, as directors.

The agreement is set out below:

Agreement in principle as of June 23, 1988:

Mr. Joseph Roth will extend the existing standby letter of credit to June 30, 1989.

Isomed, Inc. will immediately deliver to Mr. Joseph Roth 350,000 shares of Lansco Resources Ltd. stock in saleable form as per Instructions (sic) of Mr. Joseph Roth.

Payment of one-half of the outstanding interest indebtedness shall be made at once and the remaining amount shall be paid in six equal monthly installments. The total indebtedness as of June 30, 1988 is acknowledged to be $53,500.

Isomed shall have thirty days in which to substitute another of letter of credit (wholly or partial (sic)) and in that case there will be a return of shares above stated pro rata.

The shares were never delivered to Joseph. No substitute letter of credit was found within the thirty day period.

## II.

■ In testimony at trial Walter satisfactorily accounted for $155,178.95 of defendant's funds paid to the Roths. $65,000 was paid in consulting fees for services Walter performed pursuant to the agreement between Transnational and defendant. The checks were made out to Joseph and the agreement was signed by Joseph. I accept Walter's testimony that this agreement was for his, Walter's, services and was entered into in his father's name to shield Walter's assets from reach of a potential judgment in pending litigation. The agreement is signed by Hirshfield, as president of Isomed. Thus, there is a presumption, not rebutted in this instance, that Hirshfield agreed to this accommodation. There was no proof that the $65,000, accounted for by Walter as consulting fees, was anything other than payment to Walter for services rendered. Lending even more credibility to Walter's testimony was the disclosure that Hirshfield was paid sub-

stantial fees as a consultant to Isomed during the same period. The payment of consulting fees was clearly not partial liquidation of Isomed's indebtedness to Joseph.

Walter also accounted for $56,470.72 amounting to payment by defendant of the principal and interest due on the $50,000 loan from Joseph to defendant on August 1, 1986.

Finally, he accounted for $33,708.23 in interest payments on the letter of credit while it was outstanding.

Defendants have presented no credible evidence to warrant rejection of this testimony. Accordingly, the court finds that payment of $155,178.95 by Isomed to the Roths as indicated in Walter's testimony was for valid and legitimate obligations owed Walter for consulting services performed by him pursuant to agreement and to Joseph in liquidation of defendant's indebtedness to him. Defendant claims $158,352.99 in its counterclaims. Walter has accounted for $155,178.95. Defendant has presented no testimony of any payments in addition to those itemized in Walter's testimony and the court concludes that Walter's testimony has detailed all the of the outstanding funds involved. Accordingly, the counterclaims are dismissed.

Defendant contends that the June 23, 1988 agreement lacked consideration. It argues that Joseph, in extending the letter of credit, was doing no more than he was required to do under the September 30, 1984 agreement which was to continue providing the standby letter in the amount of $200,000 and to receive interest thereon at the rate of 7½% per annum.

As the defendant correctly points out, consideration is a necessary ingredient for an enforceable contract. Consideration, which can take the form of either promise or performance, can be either a bargained for gain or advantage to the promisee or a bargained for legal detriment or disadvantage to the promisor. *Holt v. Feigenbaum*, 52 N.Y.2d 291, 299–300, 437 N.Y.S.2d 654, 658–659, 419 N.E.2d 332, 336–337 (1981). If it is a forbearance, it must generally be to refrain from doing

that which a party has a legal right to do. If it is an act, it must generally be something that a party is not otherwise legally required to perform. It is a basic principle that the promise to perform or actual performance of a pre-existing duty is not adequate consideration. *James A. Haggerty Lumber & Mill Work, Inc. v. Thompson Starrett Constr. Co.*, 22 A.D.2d 509, 510, 256 N.Y.S.2d 1011, 1012 (1965).

Plaintiff did not have a pre-existing duty to continue to provide the standby letter of credit. He could have decided to refuse to continue to provide the standby letter of credit and take his losses, but in doing so he would have thereby deprived defendant of a benefit. Joseph's agreement to continue to provide the standby letter of credit beyond the date he had expressed his desire to be freed from this standby obligation and the extension of the letter of credit to June 30, 1989, on July 12, 1988, was sufficient consideration to validate the June 23rd agreement.

Defendant suggests that the June 23rd agreement was merely an agreement to agree, lacking agreement as to certain material terms, and is therefore unenforceable. Certainly "it is well settled that a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable." *Bernstein v. Felske*, 143 A.D.2d 863, 865, 533 N.Y.S.2d 538, 540 (2d Dept.1988). This, however, only applies to material terms. Non-material terms may be left to future agreement without jeopardizing the binding effect of the contract. *Four Seasons Hotels, Ltd. v. Vinnik*, 127 A.D.2d 310, 317, 515 N.Y.S.2d 1, 6 (1st Dept.1987).

Under these standards, the June 23rd undertaking is an enforceable contract because all the essential terms of the agreement are contained in the June 23rd document. Joseph was to extend the standby letter of credit to June 30, 1989, and in fact did so on July 12, 1988. Isomed was to deliver to him immediately 350,000 shares of Lansco Resources, Ltd. stock in saleable form pursuant to Joseph's instructions. The schedule for the payment of outstanding interest indebtedness was set forth.

Isomed was to have thirty days to secure a substitute letter of credit. In the event of success, Joseph was required to make a pro rata return of the Lansco shares. It is clear that the document in question is much more specific than contracts which are struck down for lack of agreement on material terms. *See, e.g., Yan's Video, Inc. v. Hong Kong TV Video Programs, Inc.*, 133 A.D.2d 575, 578, 520 N.Y.S.2d 143, 145 (1st Dept.1987) (agreement to negotiate in good faith to renew agreement upon terms and conditions to be negotiated is nothing more than an agreement to agree and is not enforceable).

The parties have stipulated that the value of the publicly tradeable shares of Lansco Resources, Ltd. was $0.70 Cd. (70 cents Canadian) on July 12, 1988.

Plaintiff is entitled to damages of $245,000 Cd. for breach of the June 23rd agreement regarding delivery of the stock. The parties agree that the proper conversion rate for July 12, 1988, is $1 Cd. equals $.82644 U.S. At this rate, plaintiff's damages for breach of the June 23rd agreement amount to $202,477.80.

As of June 30, 1988, Joseph was owed $53,500 in interest on the standby letter of credit. In addition, defendant owes interest on the letter of credit at 7½% for the period June 30, 1988 to June 30, 1989. These two amounts total $68,500. Walter testified that $31,208.33 in interest payments on the letter of credit were made subsequent to the June 23, 1988 agreement, and thus the outstanding unpaid interest on the letter of credit is $37,291.67.

In sum, plaintiff is awarded $202,477.80 for breach of contract and is entitled to interest at nine percent (9%) from July 12, 1988, plus $37,291.67 in unpaid interest due on the letter of credit.

IT IS SO ORDERED.