**Roland HARTMAN, Plaintiff,**

v.

**Robert HARRIS and Donald Hartman, Defendants,**

**Renee Hartman, Intervenor.**

**No. 90 Civ. 6203 (RLC).**

United States District Court, S.D. New York.

Dec. 16, 1992.

The Jacob D. Fuchsberg Law Firm, New York City, for plaintiff (James M. Lane, of counsel).

Nathaniel M. Swergold, Cedarhurst, NY, for defendants.

Melvin W. Wolff, Mineola, NY, for intervenor.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Roland Hartman ("Roland") brings this diversity action against his son, Donald Hartman ("Donald") and Robert Harris ("Harris"), for breach of contract and fraud.[1] The defendants have moved, under Rule 56, F.R.Civ.P., for summary judgment on each cause of action, contending that plaintiff's claims are invalid because they are based on an illegal contract.

### I.

The undisputed facts are as follows. On August 14, 1964, a rare 17th century bronze statue crafted in Benin was stolen from a New York art gallery. Plaintiff, then an art and antiquities dealer living in New York, acquired the bronze in 1965 for approximately $50,000 in cash and merchandise from a fellow art dealer. After possessing the piece for some years, plaintiff was informed by Oscar Myer, another art dealer, that the statue was a stolen figure. Although plaintiff admits that he "took Myer's word,"[2] he never reported it to any law enforcement agency. Instead, he placed the statue in storage until 1976, when he and Donald, also an art dealer, moved to California and brought the sculpture with them.

In 1980, plaintiff alleges that he entered into an oral agreement (the "agreement") with Donald for Donald to take the bronze to New York, make it marketable, and sell it. Father and son were to share the profits from the sale. In November, 1986, the statue was sold at Sotheby's in New York for $720,000. Plaintiff alleges that Donald informed him of the sale, but told him that the proceeds would be held in escrow for three years due to questions regarding the title. Roland now believes that Sotheby's paid the sale proceeds to Harris as Donald's agent.

Undeterred by his own iniquitous behavior, plaintiff petitions this court for relief against his deceitful offspring. His first and second claims (the "contract claims") allege that defendants breached the agreement by failing to remit to him any of the proceeds from the sale. Plaintiff's third cause of action alleges that Donald committed fraud based on his 1986 statement regarding escrow.

### II.

In order to prevail on their summary judgment motion, defendants must show that "there is no genuine issue as to any material fact and that [they are] entitled to a judgment as a matter of law." Rule 56, F.R.Civ.P. The court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue" which must be reserved for trial. *Anderson v. Liberty Lobby, Inc.,*

---

1. Renee Hartman, plaintiff's former spouse, has intervened in the action, alleging that any monies recovered by plaintiff are due to her.

2. Defendants' Statement Pursuant to Rule 3(g) of the Civil Rules of the Southern District ¶ 6; admitted in Plaintiff's Response to Rule 3(g) Statement ¶ 6.

477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

### A.

■ Defendants contend that summary judgment is warranted on the contract claims because performance of the agreement violated several criminal statutes. It is well settled under New York law [3] that a contract to perform illegal acts is void and unenforceable. *See, e.g., Riggs v. Palmer,* 115 N.Y. 506, 511–512, 22 N.E. 188 (1889); *Barker v. Kallash,* 91 A.D.2d 372, 459 N.Y.S.2d 296 (2d Dep't 1983). However, the illegality of the contract must be determined based on the laws of each jurisdiction wherein acts related to the contract were performed. *See Restatement (Second) of Conflict of Laws* § 202 cmt. c (1971).

■ Defendants maintain that Roland and Donald violated the following laws: (1) a California stolen goods statute, Cal. Penal Code § 496(1) (West 1988),[4] by failing to report the statue as stolen when it was located in that state; (2) a federal stolen goods statute, 18 U.S.C. § 2314 (1990),[5] by transporting the statue from California to New York to be sold; and (3) a New York stolen property statute, N.Y. Penal Law § 165.50 (McKinney 1988)[6] by failing to report the bronze as stolen when Donald returned to New York.[7] However, knowledge of the stolen nature of the property is a necessary element of all these crimes, *See United States v. Wallach,* 935 F.2d 445, 466 (2d Cir.1991) (federal statute);

*People v. Rodriguez,* 177 Cal.App.3d 174, 222 Cal.Rptr. 809, 812 (1986) (California statute); *People v. Smith,* 116 A.D.2d 819, 496 N.Y.S.2d 852 (3d Dep't 1986) (New York statute); and plaintiff argues that he did not know at the time of the agreement that the statue was stolen. Since Roland does not otherwise contest that the contract's performance was in violation of these statutes, a finding that he possessed the requisite knowledge would establish the illegality of the contract and bar this lawsuit.

■ According to plaintiff, he remained unsure whether the bronze was stolen until the time of his deposition in the case, when a *New York Times* article on the statue's theft was presented to him. He cites the following testimony from the deposition to support his position:

Q: As you sit here today, sir, is there any question in your mind about the fact that this piece was a stolen piece when you acquired it?

A: I don't—there was a lot of circumstances about it.

I'm absolutely not the one that can answer the question 100 percent. I'm not going to say I know. There's a chance it may not have been. Also, there were a lot of things and as I sit here, I don't know and I don't want to guess. I would be crazy if I tried to contradict that article, and I'm not about to.

Q: You're referring to Defendants' Exhibit B for identification, the article in the "New York Times."?

---

3. In a previous opinion in this action, the court held that New York law governs the contract at issue, *see* slip op. at 3 n. 3, 1990 WL 212973 (Dec. 18, 1990), and that is the law of the case.

4. Section 496(1) reads, in pertinent part:

"Every person who buys or receives any property which has been stolen ... or who conceals, sells, withholds or aids in concealing, selling, or withholding any such property from the owner, knowing the property to be so stolen ... is punishable."

5. 18 U.S.C. § 2314 reads, in pertinent part:

"Whoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the

same to have been stolen ... [s]hall be fined ... or imprisoned."

6. Section 165.50 reads, in pertinent part:

"A person is guilty of criminal possession of stolen property in the third degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof."

7. Defendants also claim that plaintiff violated the federal and New York statutes based on aiding and abetting theories, and that plaintiff's possession of the bronze prior to 1976 and his transport of the sculpture to California constitute additional criminal acts. In light of the court's holding, these claims need not be addressed.

A: I would find it very difficult to argue the point, now seeing this.

Deposition of Roland Hartman at 43–44. Whatever meaning may be gleaned from these unresponsive answers, it is clear that they pertain only to Roland's present awareness of the figure's provenance. This testimony has no bearing on his knowledge at the relevant time when he entered into the contract.

The defendants also rely on plaintiff's deposition to support their claim that Roland knew the sculpture was stolen as far back as 1976:

Q: Did you have any reason to doubt, at that time, that the piece was a stolen piece in '76?

A: As far as I can remember, yes, I knew it at that point.

Q: That it was a stolen piece?

A: Yes.

. . . . .

Q: My question is: Now in 1976, was there any doubt in your mind that this piece was stolen.

A: I continued to assume it was.

. . . . .

Q: Well, did you have ownership of "The Bronze" in 1980?

A: I still have ownership. I haven't got ownership of "The Bronze". Wait a minute. Until "The Bronze" was sold in Sotheby's, "The Bronze" was mine.

Q: And your knowledge was that the piece was a stolen piece?

A: Yes.

*Id.* at 53–54, 100–01.[8] This testimony, as well as plaintiff's admission that he had trusted Myer's information regarding the theft[9], clearly demonstrate that he knew the sculpture had been stolen when he entered into the agreement with Donald to sell it. Since this knowledge establishes the requisite mental state for a violation of the federal, California and New York statutes, the 1980 agreement is void and unenforceable.

### B.

Plaintiff also contends that he is entitled to maintain the contract claims based on events following the sale in 1986. He argues that a new contract was formed by Donald's statement to him that the sale proceeds would be in escrow for three years. Based on this statement, plaintiff allegedly believed that he would receive his share when the escrow ended.

In order for this purported contract to be enforceable, there must be consideration. *See, e.g., Holt v. Feigenbaum,* 52 N.Y.2d 291, 299–300, 437 N.Y.S.2d 654, 658–659, 419 N.E.2d 332 (1981). Plaintiff asserts that the consideration was his forbearance on his right to immediate payment under the illegal 1980 contract. However, "[i]f [the consideration] is a forbearance, it must generally be to refrain from doing that which a party has a *legal* right to do." *Roth v. Isomed, Inc.,* 746 F.Supp. 316, 319 (S.D.N.Y.1990) (Carter, J.) (emphasis added). Since the plaintiff "require[s] the aid of the illegal transaction to make out his case," *Ferkin v. Board of Educ. of Union Free Sch. Dist. No. 25,* 278 N.Y. 263, 268, 15 N.E.2d 799 (1938) (citation omitted)[10], the alleged 1986 contract must also be void. Therefore summary judgment will be granted on plaintiff's first and second claims.[11]

---

8. Plaintiff's attorney objected to this line of questioning, claiming that these questions had already been asked and answered in the deposition testimony that plaintiff relies upon in opposing this motion. However, if this objection were presented at trial it would be overruled, since in the previous testimony plaintiff was only asked about his present knowledge and in that testimony plaintiff's answer was unresponsive to the question.

9. *See* text accompanying note 2, *supra.*

10. *See also De Persia v. Merchants Mut. Casualty Co.,* 268 A.D. 176, 49 N.Y.S.2d 324 (2d Dep't 1944), *aff'd* 294 N.Y. 708, 61 N.E.2d 449 (1945); and 21 *New York Jurisprudence 2d* § 177 (1982).

11. The court previously decided that plaintiff's first and second causes of action against defendant Harris constitute unjust enrichment claims, while the claims asserted against Hartman are purely contractual. *See* slip op. at 4–5 (Dec. 18, 1990). However, quasi-contractual claims such as those against Harris are subject to the same rules regarding illegality. *See Segrete v. Zimmerman,* 67 A.D.2d 999, 413 N.Y.S.2d

It is regrettable that the defendant, Donald Hartman, who openly admits violating at least three criminal statutes [12] and unabashedly uses these illegal acts to shield himself from liability, will benefit from this determination. However, "[w]here the parties' arrangement is illegal 'the law will not extend its aid to either of the parties ... or listen to their complaints against each other, but will leave them where their own acts have placed them.'" *United Calendar Mfg. Corp. v. Huang,* 94 A.D.2d 176, 463 N.Y.S.2d 497,500 (1983) (citation omitted). Thus, the present holding in favor of defendants shall not be construed as a condonation of their deplorable conduct.

### III.

■ Plaintiff's third claim alleges that, in 1986, Donald fraudulently induced plaintiff to abandon his right to a portion of the sale proceeds by falsely telling him that the funds would be held in escrow for three years. However, a cause of action for fraud cannot be maintained unless plaintiff *detrimentally* relied on the misrepresentation. *See, e.g., Roney v. Janis,* 77 A.D.2d 555, 430 N.Y.S.2d 333, 335, (1st Dep't 1980), *aff'd* 53 N.Y.2d 1025, 442 N.Y.S.2d 484, 425 N.E.2d 872 (1981). Even assuming Roland's allegations to be true, plaintiff has suffered no injury since he was never entitled to any of the money. Thus, defendants' motion for summary judgment is granted as to the fraud claim.

### CONCLUSION

Accordingly, defendants' motion, under Rule 56, F.R.Civ.P., for summary judgment on all of plaintiff's claims is granted and this action is dismissed.

IT IS SO ORDERED.

732 (2d Dep't 1979); *Restatement (Second) of Contracts* § 197 (1981). Therefore the unjust enrichment claims must be dismissed along with the contract claims.

**12.** *See* text accompanying notes 5, 6, and 7, *supra.*