JAMES ZELLNER, Appellant, v STEPHEN D. CONRAD, M.D., P. C., Respondent.

Second Department, November 9, 1992

APPEARANCES OF COUNSEL

*Hochfelder & Weininger,* White Plains *(Robert S. Weininger* of counsel), for appellant.

*Karp & Sommers,* New York *(Aaron Karp* and *Howard M. Sommers* of counsel), for respondent.

**OPINION OF THE COURT**

COPERTINO, J.

The principal question which confronts us on this appeal is whether an at-will employee or independent contractor can be bound by a restrictive covenant limiting his ability to practice his profession both temporally and geographically where the covenant was given after employment began and where no additional benefits were obtained from the employer. We hold that he can.

The plaintiff, James Zellner, is an ophthalmologist licensed to practice medicine in the State of New York. In February 1984 he began working as a salaried employee of Ophthalmology Associates of Bay Ridge, P. C., in Brooklyn. In April 1984 another of the employees of Ophthalmology Associates, Dr. Stephen Conrad, who had formed his own professional corporation, which is the defendant herein, purchased the medical practice for more than $1,000,000. Conrad described the practice as "very substantial", consisting of thousands of patients who reside, for the most part, in the vicinity of its office. Zellner went to work for the defendant in July of that year. There is no dispute that Zellner's status was that of an independent contractor, who was to be compensated by receiving a 50% share of the fees the defendant charged the patients he treated.

According to Zellner, this arrangement was to be a temporary one and he was promised he would eventually be permitted to buy into the defendant by purchasing shares thereof and investing in equipment purchased during the interim period. He also contends that Conrad agreed to enter into a

written agreement formalizing their relationship as soon as he commenced work for the defendant, and that negotiations, conducted both personally and through their respective attorneys, began at about this time. After several months Zellner believed that an agreement was within reach, but in January of 1985 he received a proposed letter agreement, dated January 31, 1985, which contained the restrictive covenant at issue in this case. The agreement was accompanied by a letter of transmittal from the defendant's counsel stating that "his execution of this restrictive covenant is required as a condition to his remaining a consultant to the Corporation". Based on what he describes as Conrad's assurances that the letter agreement was intended to operate only until the two had executed the formal employment and shareholder agreements, and that he was constrained as sole support of his family, Zellner signed.

The January 31, 1985, agreement provides that as consideration for his continued retention as an "independent consultant" to the defendant, "without any specified term or formal agreement", Zellner recognized the proprietary rights of the defendant in its patient lists, their records, and "certain other property," and that he should not use such proprietary information to compete with the defendant. Based upon these understandings, Zellner agreed that upon termination of his relationship with the defendant he would not engage in the practice of ophthalmic medicine within a two-mile radius of the defendant's office for two years, nor solicit or treat any of its patients during that period. Zellner further agreed, "irrespective of any other rights" that the defendant would be entitled to receive 35% of the gross collections from his medical practice during the two-year period as liquidated damages if he competed with the defendant "in any manner violative" of the aforementioned restrictions. The agreement concluded with an acknowledgment that it "shall not be deemed" an employment agreement, and that the defendant retained all rights to obtain any judicial remedies available, including injunctive relief.

It is undisputed that the parties never entered into the employment and shareholder agreements for reasons Zellner attributes to bad faith negotiations on Conrad's part, and that the plaintiff terminated his relationship with the defendant on June 21, 1990, effective June 29, 1990. He opened an office within 13 blocks of the defendant and began treating patients with whom he had developed a relationship during his associa-

tion with the defendant. Zellner also mailed professional announcements of his changed location to "potential patients", to colleagues and to "certain residents of Brooklyn" who appeared on a mailing list purchased from a direct mail marketing firm. He also began the instant lawsuit.

In his complaint the plaintiff alleged, *inter alia,* wrongful and oppressive conduct by Conrad and that he expected the defendant to seek injunctive relief prohibiting the plaintiff from practicing ophthalmology or ophthalmic surgery. The plaintiff also alleged that the liquidated damages provision gave the defendant an adequate remedy at law. He sought a judgment declaring that the restrictive covenant limiting his ability to practice medicine was unenforceable. The case is before us on the defendant's motion for a preliminary injunction, which the Supreme Court granted.

The principal argument advanced by the plaintiff on this appeal is addressed to the Supreme Court's finding that the defendant had demonstrated a likelihood of success on the merits of its claim for a permanent injunction enjoining the plaintiff from practicing ophthalmic medicine and surgery under the terms of the January 31, 1985 agreement, which had been asserted by way of counterclaim in its answer *(see, e.g., Grant Co. v Srogi,* 52 NY2d 496; *Albini v Solork Assocs.,* 37 AD2d 835). He contends that because his employment already had begun by the time he was presented with the agreement, the defendant was obliged to present him with some additional consideration in exchange for his promise not to compete after termination of their relationship. He claims that the defendant failed to do so. Stressing the fact that no written employment contract ever came into being and that the defendant thus had no obligation to pay him any particular sum—or, for that matter, to continue to use his services at all—he asserts that the restrictive covenant was not ancillary to any other agreement which might serve to justify its existence, rendering the covenant a naked and thus unenforceable restraint on trade.

It is well established that while restrictive covenants tending to prevent a person from pursuing his or her vocation after termination of an employment relationship are disfavored by the law *(Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp.,* 42 NY2d 496), they generally will be enforced against medical and dental professionals if such covenants are reasonably limited temporally and geographically and, without being harmful to the public or unduly burdensome, serve the accept-

able purpose of protecting the former employer or associate from unfair competition *(Gelder Med. Group v Webber,* 41 NY2d 680; *Karpinski v Ingrasci,* 28 NY2d 45). We find, as did the Supreme Court, that, under the facts of this case, the covenant at issue met these requirements. We also note that the presence of a liquidated damages provision did not foreclose the granting of injunctive relief *(see, Karpinski v Ingrasci, supra).* However, it must not be forgotten that restrictive covenants are, first and foremost, contracts. As with any contract, the promise not to compete must be supported by adequate consideration on the part of the promisee. The only consideration cited in the agreement was the plaintiff's continued retention as an independent consultant by the defendant, with no changes made to the then-existing relationship. The question for us to determine is whether this was sufficient.

We observe that for purposes of our analysis no distinction need be drawn between the independent contractor, the position of the plaintiff here, and the at-will employee, the position addressed by nearly all the relevant law. While important differences between the independent contractor and the salaried employee surely exist *(see generally,* 3 NY Jur 2d, Agency and Independent Contractors, §§ 322-335), they are not material to the question before us *(cf., Price Paper & Twine Co. v Miller,* 182 AD2d 748). Whether one identifies Zellner as an at-will employee or an independent contractor, he was paid for the work he did and had no contractual expectation of anything more, and that is what matters.

We agree with the plaintiff that in New York, as elsewhere, a promise to refrain from competition is unreasonable and unenforceable where the promise is not ancillary either to a contract for the sale of a business or to existing employment or a contract of employment *(see, Paramount Pad Co. v Baumrind,* 4 AD2d 944, *affd* 4 NY2d 393; 54 Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices, § 514; Annotation, *Validity and Construction of Contractual Restrictions on Right of Medical Practitioner to Practice, Incident to Sale of Practice,* 62 ALR3d 918; Annotation, *Validity and Construction of Contractual Restrictions on Right of Medical Practitioner to Practice, Incident to Employment Agreement,* 62 ALR3d 1014). We believe, however, that at-will employment qualifies as a relationship which will support a restrictive covenant. This type of employment is certainly an acceptable arrangement in New York, and—of interest to us here—the Court of Appeals has declined to expand the em-

ployee's remedies after being discharged even where that discharge arguably was motivated by bad-faith concerns or had a powerful adverse impact on the person terminated *(see, Sabetay v Sterling Drug,* 69 NY2d 329, 335; *Murphy v American Home Prods. Corp.,* 58 NY2d 293). We thus conclude that, as an "existing employment", the relationship between the plaintiff and defendant formed the context in which the employer could legally seek a restrictive covenant, even though a claim of bad faith on the defendant's part has been made and the plaintiff's fear of the effect termination of his employment would have on his family meant that he had little choice but to accept.

We reject the plaintiff's contention that there was no valid existing employment because his underlying "contract" with the defendant was unenforceable. He makes this claim based upon the defendant's unfettered ability to unilaterally change the rate of compensation and other elements of their financial relationship, citing *Triple D & E v Van Buren* (72 Misc 2d 569, 571). This is essentially a "straw man" argument because it presumes the existence of an employment contract, while at-will employment by its nature involves no formal contract of employment at all *(see,* Restatement [Second] of Contracts § 188, comment *g).* Consequently, we do not believe that findings made by the Supreme Court in *Triple D & E,* a case involving a written contract containing a restrictive covenant, are relevant to the validity of the covenant at issue here. There the court found the entire contract unenforceable and thus the covenant fell with it.

We now turn to the heart of the plaintiff's argument, the absence of additional consideration for the restrictive covenant, which he claims was necessary because he already had been hired as an independent contractor some months before. As the plaintiff contends, courts in other jurisdictions have held that some additional consideration, not the mere continuation of employment (the consideration asserted by the defendant in this case) must be given to support a restrictive covenant once employment has begun *(see, Freeman v Duluth Clinic,* 334 NW2d 626 [Minn]; *George W. Kistler, Inc. v O'Brien,* 464 Pa 475, 347 A2d 311; *Mail-Well Envelope Co. v Saley,* 262 Ore 143, 497 P2d 364; *Kadis v Britt,* 224 NC 154, 29 SE2d 543; *Schneller v Hayes,* 176 Wash 115, 28 P2d 273; *Morgan Lbr. Sales Co. v Toth,* 41 Ohio Misc 17, 321 NE2d 907). The reasoning underlying this view may be stated simply: since the employer's obligation under the covenant

amounted to do no more than to employ the employee executing the covenant, something the employer already had agreed to do at the time of the initial employment, no consideration was given for the later agreement *(see, Perthou v Stewart,* 243 F Supp 655, 658, citing *McCombs v McClelland,* 223 Ore 475, 476, 483, 354 P2d 311).

On the other hand, there are a number of courts which have recognized continued employment as consideration sufficient to support a covenant not to compete where discharge was the alternative or where the employee remained with the employer for a substantial time after the covenant was signed *(Affiliated Paper Cos. v Hughes,* 667 F Supp 1436 [ND Ala]; *Mattison v Johnston,* 152 Ariz 109, 730 P2d 286; *Research & Trading Corp. v Powell,* 468 A2d 1301 [Del Ch]; *Corroon & Black of Ill. v Magner,* 145 Ill App 3d 151, 494 NE2d 785; *Hogan v Bergen Brunswig Corp.,* 153 NJ Super 37, 378 A2d 1164; *Thomas v Coastal Indus. Servs.,* 214 Ga 832, 108 SE2d 238; *Roessler v Burwell,* 119 Conn 289, 176 A 126). We believe the latter position to be the better view. Because in at-will employment the employer has the right to discharge the employee (or, as here, an independent contractor providing services under a similar arrangement), without cause, and without being subject to inquiry as to his or her motives *(Sabetay v Sterling Drug, supra),* forbearance of that right is a legal detriment which can stand as consideration for a restrictive covenant. It is certainly true that this detriment would have little meaning if the employer exercised his right to terminate the employment shortly after the execution of the agreement. However, where, as here, a relationship continues for a substantial period after the covenant is given, the forbearance is real, not illusory, and the consideration given for the promise is validated. Thus, "forbearance to discharge" and "continued employment" are but two expressions of the same legal detriment *(Hogan v Bergen Brunswig Corp., supra).* Accepting the plaintiff's position would mean that the employer would have to fire the at-will employee and then immediately offer to rehire the employee on the condition that he or she sign the covenant in order to protect the covenant from a later attack that it lacked consideration *(see, McRand, Inc. v Van Beelen,* 138 Ill App 3d 1045, 486 NE2d 1306). We will not encourage unnecessary legal dramatics.

Accordingly, we hold that the plaintiff's promise not to compete was supported by adequate consideration, and, because it otherwise met the requirements established under

settled New York law, it is enforceable *(Gelder Med. Group v Webber, supra; Karpinski v Ingrasci, supra).* The two-year period has expired, but we believe that the issues involved merited a full discussion. Therefore, and for purposes of this motion, we declare the covenant at issue to be valid and the injunction properly granted *(see, Tulchin Assocs. v Vignola,* — AD2d —, 1992 NY Slip Op 03535 [2d Dept, Sept. 21, 1992]).

ROSENBLATT, J. P., RITTER and PIZZUTO, JJ., concur.

Ordered that the order is affirmed, with costs.