LARRY A. JONES, and SACRAMENTO LIGHTING SERVICES, Appellants, v. MARK DEETER, dba DEETER LIGHTING, Respondent.

No. 26861

April 3, 1996             913 P.2d 1272

*Thomas A. Vallas,* Reno, for Appellant.

*Law Office of Del Hardy, and J. T. Cardinalli,* Reno, for Respondent.

## OPINION

*Per Curiam:*

On February 1, 1993, respondent Mark Deeter dba Deeter Lighting ("Deeter") employed appellant Larry Jones ("Jones") as an assistant in Deeter's business. Deeter is mainly a supplier of lighting equipment such as fixtures, ballasts and bulbs for commercial and industrial accounts. However, Deeter also performs lighting services including retrofitting, which involves replacing an existing lighting system with another more cost-efficient, energy-saving and technologically-advanced system.

Without professional assistance, Deeter personally drafted a non-compete agreement (also referred to as the restrictive covenant), which Jones signed in addition to the employment contract.[1] Pursuant to the terms of the agreement, Jones agreed not to compete with Deeter in the lighting retrofitting business for five years within a 100-mile radius of the Reno/Sparks area after the employment relationship terminated. As consideration for Jones's promise, Deeter agreed to pay him 50 cents per hour in addition to a $6.50 per hour wage. If Jones did compete by going to work with a competitor or starting his own lighting retrofit service business, the liquidated damages clause provided that Jones would pay Deeter $50,000.

At his deposition, Deeter testified that developing a customer base for lighting retrofitting is very difficult and therefore, he included non-compete agreements in the business's employment contracts to prevent employees from taking customer lists and divulging proprietary information to competitors. He further stated that he arrived at the $50,000 liquidated damages figure because it would "reasonably deter someone from going to work for a competitor."

Although the reasons why are disputed, it is undisputed that

---

[1]The restrictive covenant provides:

> This position is one of the most vital in the company. Certain trade secrets and knowledge of the business is exposed to the employee. It is agreed that fifty cents (.50) per hour will be given as a firm added base in consideration for a covenant not to compete with Deeter Lighting in the Reno, Sparks area for a radius of 100 miles for a period of five (5) years.
> The employee, upon termination will not start in direct competition by starting a similar business, or by going to work with a competitor [sic] within the 100 mile radius from the agreed amount of the time, nor will any contact be made to Deeter customers.
> Should employee do so, employee agrees to pay Deeter Lighting fifty thousand dollars ($50,000) upon demand. All legal and attorney fees encurred [sic] enforcing this agreement will be the responsibility of payment by the employee.

Deeter terminated Jones on April 30, 1993, three months after Jones started his position. The next day, May 1, 1993, Jones contacted appellant Sacramento Lighting Services, Inc. ("Sacramento Lighting") regarding possible employment in the area of lighting retrofit sales. Although they discussed an employment relationship, Jones never actually became an employee with Sacramento Lighting. However, both Dave Scott, Vice-President of Sacramento Lighting, and Jones agree that Sacramento Lighting authorized Jones as an independent salesman to offer its commercial lighting products for sale.

Jones and Dave Scott discussed soliciting business in the Reno area. Jones stated that they agreed that any existing Deeter Lighting clients should not be contacted. When Jones learned that Sacramento Lighting had already done work for CB Commercial in the central valley of California, he suggested that Sacramento Lighting approach CB Commercial regarding the many properties it manages in Reno. Dave Scott authorized Jones to contact CB Commercial regarding Old Town Mall in Reno for lighting retrofitting services on behalf of Sacramento Lighting. Jones made some telephone calls to solicit business, but generated no business for Sacramento Lighting. Sacramento Lighting paid Jones $750 in compensation for his efforts and trips to and from Sacramento.

In July 1993, Deeter filed a complaint against Jones and Sacramento Lighting to enforce the non-compete agreement, including the liquidated damages provision, and alleging misappropriation of trade secrets. Jones filed an answer and a counterclaim against Deeter alleging interference with a prospective economic relationship causing financial damage. Following a hearing before the district court, Deeter obtained a preliminary injunction enjoining Jones from violating the non-compete agreement and enjoining Sacramento Lighting Services from employing Jones. Thereafter, Deeter and Sacramento Lighting entered into a stipulation dismissing Sacramento Lighting from the action with prejudice.

Jones moved for summary judgment as to each of Deeter's claims for relief. Deeter filed an opposition and a cross-motion for summary judgment. The district court entered an order granting Deeter's motion for summary judgment. In its order, the district court found that: (1) the covenant not to compete was reasonable and enforceable; (2) Jones had violated the terms of the covenant; (3) the $50,000 liquidated damages provision was "an amount meant to punish" Jones and instead awarded damages of $3,500; and (4) Deeter's claim for misappropriation of trade secrets was not supported by the facts.

On appeal, Jones contends that the district court erred in

enforcing the restrictive covenant. Specifically, Jones argues that NRS 613.200 operates to invalidate the covenant. While we do not agree that NRS 613.200 operates to render the covenant unenforceable, we agree that the district court erred in enforcing the restrictive covenant on the ground that the covenant is not reasonable under the test set forth in Hansen v. Edwards, 83 Nev. 189, 426 P.2d 792 (1967).

*Hansen* is the seminal case in Nevada dealing with restrictive covenants on employment. In *Hansen,* an established Reno podiatrist, Dr. Edwards, employed another doctor, Dr. Hansen, to work with him in his practice. *Id.* at 191, 426 P.2d at 793. As part of his employment contract, Hansen agreed to a post-employment covenant not to compete restricting him from engaging in the practice of surgical chiropody within a radius of 100 miles of Reno upon termination of his employment. *Id.* No time limit was mentioned. *Id.* After Hansen terminated his contract with Edwards, he opened his own office for the practice of podiatry near Edwards' office. *Id.* Edwards sought and obtained an order for a preliminary injunction restraining Hansen from practicing within a 100-mile radius of Reno. Hansen appealed the order granting the preliminary injunction, arguing that the restrictive covenant was invalid as against public policy. *Id.*

In *Hansen,* this court set forth the test for determining whether a covenant not to compete is enforceable, stating:

> An agreement on the part of an employee not to compete with his employer after termination of the employment is in restraint of trade and will not be enforced in accordance with its terms unless the same are reasonable. Where the public interest is not directly involved, the test usually stated for determining the validity of the covenant as written is whether it imposes upon the employee any greater restraint than is reasonably necessary to protect the business and good will of the employer. A restraint of trade is unreasonable, in the absence of statutory authorization or dominant social or economic justification, if it is greater than is required for the protection of the person for whose benefit the restraint is imposed or imposes undue hardship upon the person restricted. The period of time during which the restraint is to last and the territory that is included are important factors to be considered in determining the reasonableness of the agreement.

*Id.* at 191-92, 426 P.2d at 793. After applying this test, this court concluded that the covenant was unreasonable and modified it as follows: "The circumstances of this case warrant a confinement of the area of restraint to the boundary limits of the City of Reno

and a time interval of one year commencing February 10, 1967, the date of the injunction." *Id.* at 193, 426 P.2d at 793.

This court rejected Hansen's argument that NRS 613.200 embodies Nevada's policy that restrictive covenants on employment are per se invalid. *Id.* at 193, 426 P.2d at 794. At that time, NRS 613.200 provided:

> Any person, association, company or corporation within this state, or any agent or officer on behalf of the person, association, company or corporation, who wilfully does anything intended to prevent any person who for any cause left or was discharged from his or its employ from obtaining employment elsewhere in this state shall be punished by a fine of not more than $5,000. If a fine is imposed pursuant to this section, the costs of the proceeding including investigative costs and attorney's fees, may be recovered by the labor commissioner.

NRS 613.200 expresses a general policy that it is impermissible to wilfully interfere with another person's securing of employment. After quoting this statutory language, this court stated the following in *Hansen*:

> A few states have statutes specifically prohibiting restraints as that with which we are here concerned. Those statutes do not compare with NRS 613.200. We are of the opinion that our statute is not directed to this problem. *It concerns only persons who seek employment with someone else, not those who intend self-employment.*

*Id.* (emphasis added). Thus, in *Hansen,* this court distinguished between restrictive covenants where the employee becomes self-employed and restrictive covenants where the employee seeks employment with another employer. *Id.* According to this court's holding in *Hansen,* the former are enforceable if reasonable and the latter are governed by NRS 613.200 and unenforceable. We now realize that such a distinction is a misinterpretation of the law as the Nevada Legislature has amended the statute to clarify its policy on restrictive covenants in light of this language in *Hansen.* NRS 613.200 now includes the following:

> 2. The provisions of subsection 1 *do not prohibit* a person, association, company, corporation, agent or officer from negotiating, executing and enforcing *an agreement with an employee* of the person, association, company or corporation *which upon termination of the employment, prohibits the employee from*:
> (a) Pursuing a similar vocation in competition with or

> *becoming employed by a competitor of the person, association, company or corporation*; or
>     (b) Disclosing any trade secrets, business methods, lists of customers, secret formulas or processes or confidential information learned or obtained during the course of his employment with the person, association, company or corporation, if the agreement is supported by valuable consideration and is otherwise reasonable in its scope and duration.

(Emphasis added.) It further provides that "[t]his act becomes effective upon passage and approval."

From the legislative history of this additional language, it is clear that the Nevada Legislature never intended NRS 613.200 to render post-employment restrictive covenants void as against public policy. Therefore, Jones's argument that NRS 613.200 operates to invalidate the covenant is without merit.

The genuine issue for this court's consideration is whether the covenant in the instant case is reasonable. A restrictive covenant on employment will be upheld only if it is reasonably necessary to protect the business and goodwill of the employer. *Hansen,* 83 Nev. at 191, 426 P.2d at 793. The amount of time the covenant lasts, the territory it covers, and the hardship imposed upon the person restricted are factors for the court to consider in determining whether such a covenant is reasonable. *Id.* Here, the restrictive covenant prohibited Jones from competing with Deeter within a 100-mile radius of Reno/Sparks for five years after leaving Deeter's employ. After careful consideration of all the relevant factors, we conclude that the covenant is not reasonable. Although it appears that developing a customer base for the lighting retrofitting business is difficult, we nevertheless believe that a five-year duration is not reasonably necessary to protect Deeter's business and places too great a hardship on Jones. Therefore, the covenant is per se unreasonable and therefore, unenforceable.

Because the covenant is unenforceable, Jones cannot be found in breach of the covenant. Thus, the district court erred by finding that Jones breached the agreement and awarding Deeter $3,500 in damages. Accordingly, we need not address the merits of Jones's claim that the district court abused its discretion in arriving at the $3,500 sum.

For the foregoing reasons, we reverse the district court's order enforcing the covenant, finding Jones in breach, and awarding Deeter $3,500.