CAMCO, INC., a Nevada Corporation, dba SUPER-
PAWN, Appellant, *v.* ROBERT T. BAKER, HATTIE
BAKER, TERRY D. GROSS, MICHELE A. GROSS,
and CRAIG McCALL, Respondents.

No. 29119

April 24, 1997                                    936 P.2d 829

*Hunterton & Associates* and *Thea Marie Sankiewicz,* Las
Vegas, for Appellant.

*Callister & Reynolds* and *Michael J. Harker,* Las Vegas, for
Respondents.

# OPINION

*Per Curiam:*

Several former employees of SuperPawn, owned by Camco, Inc. (Camco), opened a pawn shop in Bullhead City, Arizona (which borders Nevada, near Laughlin), shortly after resigning from SuperPawn. While employed at SuperPawn, these former employees had signed a contract in which they agreed not to compete with SuperPawn, after leaving SuperPawn's employ, for a period of two years, within fifty miles of any SuperPawn store either existing or under construction, or any location which was the target of SuperPawn's plan for expansion.

Camco sought a preliminary injunction to enjoin these former employees from participating in the pawn shop business[1] in Bullhead City, Arizona. The district court concluded that the only consideration for the former employees' agreement not to compete with SuperPawn had been their continued employment with SuperPawn. As a matter of law, the district judge determined such consideration was inadequate and denied Camco's motion seeking a preliminary injunction. Camco appeals from that order.

## FACTS

The respondents, Robert and Hattie Baker (the Bakers), Terry "Darren" Gross and Michele Gross (the Grosses), and Craig McCall (McCall), are all former employees of Camco's pawn stores—SuperPawn. The Bakers and the Grosses resigned from SuperPawn's employ without notice on March 30, 1996. McCall had resigned almost a year earlier, on May 30, 1995.

Robert Baker had worked for SuperPawn since 1988 and was a regional manager at the time of his resignation. Hattie Baker started with SuperPawn in 1992, prior to her marriage to Robert, and was a store manager when she resigned. SuperPawn also hired Darren Gross in 1992, and he was a regional manager at the time of his resignation. In 1993, SuperPawn hired Michele Gross, prior to her marriage to Darren; she was SuperPawn's director of operations at the time of her resignation. SuperPawn also hired McCall in 1993, as director of corporate development. At the time of his hire, McCall signed a "Confidentiality Agreement" with SuperPawn, which included provisions restricting

---

[1] Apparently, these former employees are currently in the business of buying and selling secondhand goods and are taking steps to enter the pawn business.

McCall from soliciting SuperPawn employees upon his termination.[2]

Following McCall's May, 1995 resignation, SuperPawn had all of its management level employees, including the Bakers and the Grosses, sign a "Management Employment Agreement" (MEA) in October, 1995. The MEA contained provisions regarding non-competition, preservation of trade secrets, diversion of Super-Pawn employees, and preservation of goodwill.[3] Two of SuperPawn's other management employees refused to sign the MEA; one resigned, and the other was terminated for his refusal to sign the agreement.

On March 22, 1996, approximately one week before the Bakers and the Grosses resigned from SuperPawn, Darren, Robert, and McCall formed "Pawn Plus Corporation" (Pawn Plus) and filed Articles of Incorporation with the Nevada Secretary of State, listing McCall's Henderson pawn shop as the corporate address. On March 27, 1996, the city of Bullhead City, Arizona issued a business license to Pawn Plus; McCall, the Bakers, and the Grosses opened a store named "Pawn Plus" in Bullhead City shortly thereafter. Bullhead City is more than fifty miles from Las Vegas or Henderson, Nevada.

On June 21, 1996, Camco filed a complaint against the Bakers, Grosses, and McCall, alleging various causes of action including breach of contract, interference with contractual relationships (against McCall), interference with business advantage, and civil conspiracy. In addition to damages, Camco sought equitable relief and filed a motion for preliminary injunction that same day.

---

[2]In October, 1995, McCall became licensed to operate "ASAP Auto Pawn" in Henderson, Nevada. At that time, SuperPawn sought a preliminary injunction against McCall, individually, for allegedly violating a non-competition provision in the Confidentiality Agreement. The district court denied the injunction in Camco, Inc. v. McCall, No. A354941, concluding that the agreement defined competition as targeting and soliciting SuperPawn employees, and that McCall had not solicited any SuperPawn employees for his Henderson operation. In the instant case, SuperPawn alleges that McCall violated the Confidentiality Agreement in that he solicited the other four respondents (the Bakers and the Grosses) in conjunction with the operation of a pawn shop in Bullhead City, Arizona.

[3]Of particular relevance in this appeal is paragraph 8 of the MEA, which states:

> 8.   Upon the conclusion of the employment by SuperPawn, it is hereby agreed that the employee shall not, for a period of two years from the date of that event, engage in the pawn or check cashing business, directly or indirectly, as an individual, partner, director, officer, consultant or employee of any such enterprise operating any store or facility within fifty miles of any SuperPawn store location which was either existing, under construction or the target of a corporate plan for expansion on the date of termination of employment.

In its motion, Camco asked the court to enforce the non-competition provisions of the Bakers and Grosses' SuperPawn employment agreements and the non-solicitation provision of McCall's employment agreement, thereby enjoining the five respondents from operating Pawn Plus in Bullhead City for a period of two years.

In support of the motion below, Camco argued that Bullhead City had been a target of SuperPawn's corporate plan for expansion before and at the time of the Bakers and Grosses' resignation. The Bakers and Grosses asserted that SuperPawn did not have a business within fifty miles of Bullhead City, and further, that they did not have knowledge of SuperPawn's alleged plans to target Bullhead City. They argued that as director of operations, Michele Gross would have been privy to any such planned expansion had such plans really existed at the time of the Bakers and Grosses' resignation.

The district court concluded that the only potential consideration for the Bakers and Grosses' agreement not to compete with SuperPawn was their continued employment.[4] As a matter of law, the lower court held that continued employment was not adequate consideration for a non-competition agreement. In the transcript of the hearing below, the district court indicated that it found the time and place restrictions (two years and within fifty miles[5]) of the non-competition agreement reasonable, and would have granted the injunction had it found adequate consideration for the agreements.[6]

The issue of consideration for McCall's "Confidentiality Agreement," which contained the non-solicitation clause at issue, was not addressed by the lower court or the litigants, presumably because, unlike the other respondents, McCall had entered the agreement at the time of hire. The lower court's order denying Camco's motion for a preliminary injunction did not address that

---

[4]Camco had submitted a supplement to their motion for preliminary injunction asserting that several months after the Bakers and Grosses had signed the MEA, Superpawn had given them bonuses, vacation pay, and additional training as additional consideration for signing the agreement.

The district judge concluded "that the consideration has to be the consideration at the time of the contracts, not bonuses that came after, not vacation pay that was paid thereafter. That's not consideration, it has to be at the time of the contract."

[5]The district court erroneously refers to a seventy-five mile restriction.

[6]The lower court repeatedly stated that it believed that in an at-will employment state, continued employment should be deemed adequate consideration for non-competition agreements; however, the district court concluded that this court would hold otherwise and denied the injunction accordingly.

part of the motion which requested that McCall be enjoined from "soliciting, employing, or otherwise professionally associating" with the Bakers and the Grosses for a period of two years from McCall's termination. Therefore, the following discussion focuses on the enforceability of the non-competition provision signed by the Bakers and Grosses (also referred to as "respondents").

## DISCUSSION

*Appropriateness of injunctive relief*

In Dixon v. Thatcher, 103 Nev. 414, 415, 742 P.2d 1029, 1029 (1987), this court held:

> A preliminary injunction to preserve the status quo is normally available upon a showing that the party seeking it enjoys a reasonable probability of success on the merits and that the defendant's conduct, if allowed to continue, will result in irreparable harm for which compensatory damages is an inadequate remedy.

Because we conclude that Camco did not enjoy a reasonable probability of success on the merits, we affirm the district court's denial of the motion for a preliminary injunction.

*Camco did not enjoy a reasonable probability of success on the merits of its claim*

*The Bakers and Grosses' post-hire non-competition agreements were supported by consideration.*

Before reaching the issue of whether the non-competition provision at issue in the Bakers and Grosses' post-hire agreements were reasonable, the parties contest whether the MEAs were supported by sufficient consideration.

This court has held that an at-will employee's "continued employment after formal delivery of [an employment] handbook provides sufficient consideration for modifying the employment agreement by inclusion of the handbook provisions." Southwest Gas Corp. v. Ahmad, 99 Nev. 594, 595, 668 P.2d 261, 261 (1983). Relying on the quoted language, Camco asserts that this law is equally applicable in the instant case and that "[c]ontinued employment in an at-will state is sufficient consideration for a post-hiring [non-competition] covenant." We agree. A non-competition provision is no more than a modification to the

original employment contract, and thus the law articulated in *Southwest Gas* is dispositive.

Respondents quote the broader language of Ellis v. McDaniel, 95 Nev. 455, 596 P.2d 222 (1979). In *Ellis,* a case in which a party entered a non-competition agreement *at the time of hire,* this court addressed the reasonableness of the agreement at issue, declaring that "because the loss of a person's livelihood is a very serious matter, post employment anti-competitive covenants are scrutinized with greater care than are similar covenants incident to the sale of a business." *Ellis,* 95 Nev. at 459, 596 P.2d at 224. Invoking this language, respondents assert that something more than continued employment is required to bind an employee to a non-compete covenant entered into after the commencement of employment.

Today we adopt the majority rule which states that an at-will employee's continued employment is sufficient consideration for enforcing a non-competition agreement. *See* Mattison v. Johnston, 730 P.2d 286, 288-90 (Ariz. Ct. App. 1986) (holding that "the continued employment[7] of a terminable-at-will employee is sufficient consideration to support a restrictive covenant executed by the employee more than two years after commencement of employment"); *see also* Machen, Inc. v. Aircraft Design, Inc., 828 P.2d 73, 80 (Wash. Ct. App. 1992) (holding that continued employment is sufficient consideration in support of non-competition or confidentiality agreement).

There is "no substantive difference between the promise of employment upon initial hire and the promise of continued employment subsequent to 'day one.' " Copeco, Inc. v. Caley, 632 N.E.2d 1299, 1301 (Ohio Ct. App. 1992). A contrary holding might leave the employer in a position of having to fire an at-will employee and then rehire that same employee with the restrictive covenant in place, or have the covenant held unenforceable for want of consideration. *See* Corroon & Black of Illinois, Inc. v. Magner, 494 N.E.2d 785, 791 (Ill. Ct. App. 1986). "Besides the possible impact on employee seniority and vesting in various benefit packages, such an approach would merely exalt form over substance." Simko v. Graymar Co., 464 A.2d 1104, 1108 (Md. Ct. App. 1983).

Upon review of the reasoning behind the majority rule, we

---

[7]Courts have concluded that in an at-will employment context "continued employment" is, as a practical matter, equivalent to the employer's "forbearance to discharge"; many courts have concluded that the consideration is equally valid phrased as a benefit to the employee or a legal detriment to the employer. *See* Mattison v. Johnson, 730 P.2d 286, 286 (Ariz. Ct. App. 1986); Zellner v. Stephen D. Conrad, M.D., P.C., 589 N.Y.S.2d 903, 907 (Ct. App. 1992).

hold that continued employment in an at-will employment context should be deemed sufficient consideration to uphold a post-hire non-competition covenant. Although we conclude that the district court erred in denying Camco's preliminary injunction based upon the issue of consideration, our inquiry is not over. We must consider whether the covenant at issue would likely be deemed reasonable or void as against public policy.

> *The non-competition provisions at issue were not reasonable*

In determining whether Camco enjoyed a reasonable probability of success on the merits of its case, the court must consider whether the provisions of the non-competition agreements would likely be found reasonable at trial. Hansen v. Edwards, 83 Nev. 189, 191, 426 P.2d 792, 793 (1967). The *Hansen* court explained:

> An agreement on the part of an employee not to compete with his employer after termination of the employment is in restraint of trade and will not be enforced in accordance with its terms unless the same are reasonable. Where the public interest is not directly involved, the test usually stated for determining the validity of the [non-competition] covenant as written is whether it imposes upon the employee any greater restraint than is reasonably necessary to protect the business and good will of the employer. *A restraint of trade is unreasonable,* in the absence of statutory authorization or dominant social or economic justification, *if it is greater than is required for the protection of the person for whose benefit the restraint is imposed or imposes undue hardship upon the person restricted. The period of time during which the restraint is to last and the territory that is included are important factors to be considered in determining the reasonableness of the agreement.*

*Id.* at 191-92, 426 P.2d at 793 (citations omitted) (emphasis added); *see also* Ellis v. McDaniel, 95 Nev. 455, 458-59, 596 P.2d 222, 224 (1979) ("There is no inflexible formula for deciding the ubiquitous question of reasonableness. However, because the loss of a person's livelihood is a very serious matter, post employment anti-competitive covenants are scrutinized with greater care . . . .").

In *Hansen,* a podiatrist-employee signed a non-competition covenant in which he agreed not to practice within a one hundred mile radius of Reno; there was no time limit on this restriction. Following termination, the employee opened his own practice

near his former employer. The district court enforced the covenant as written. This court modified the preliminary injunction, limiting its scope to the Reno city limits and adding a time restriction of one year. *Hansen,* 83 Nev. at 193, 426 P.2d at 794 (citing authority for the proposition that preliminary injunctions may be modified as justice requires). In *Ellis,* this court concluded that a five-mile territorial limitation and a two-year time restriction were reasonable and enforceable provisions of a non-competition agreement.[8] *Ellis,* 95 Nev. at 459, 596 P.2d at 224.

Most recently, in Jones v. Deeter, 112 Nev. 291, 913 P.2d 1272 (1996), this court reviewed a restrictive covenant prohibiting a former employee from competing with his former employer within a one hundred mile radius for five years. We concluded that the five-year restriction was unreasonable because it placed too great of a hardship on the employee and was not reasonably necessary to protect the former employer's interests; therefore, the entire covenant was held unenforceable. *Id.* at 296, 913 P.2d at 1275.

The non-competition provisions at issue barred the Bakers and Grosses from competing with SuperPawn after leaving Super-Pawn's employ for a period of two years within fifty miles of any SuperPawn store location either existing or under construction, or within fifty miles of any area which was the "target of a corporate plan for expansion." Camco claims that Bullhead City had been a "target" for SuperPawn expansion since the fall of 1994—before the Bakers and Grosses signed the MEAs and before they resigned the following year.[9] Respondents' knowledge of Camco's plan to expand its business into Bullhead City was contested, but we conclude that respondents' knowledge is irrelevant; the reasonableness of the restriction is the germane inquiry.

Respondents argue that the territorial restriction in the MEA non-competition clause is unreasonable because it covers too broad of an area and thus operates as a greater restraint on trade

---

[8] It should be noted that the *Ellis* court narrowed the breadth of restricted activity from "the practice of medicine" to "the *general practice* of medicine." The court concluded that the restriction went beyond the scope of the employer's protectable interests; moreover, it would be against the public interest to bar the only specialized surgeon in the area from performing surgery which would force the public to drive great distances for specialized surgical procedures. *Ellis,* 95 Nev. at 459, 596 P.2d 224-25.

[9] Apparently, Bullhead City is important to Camco because Clark County has authorized the issuance of only one pawn license in Laughlin, Nevada; that license is held by a SuperPawn competitor. Camco asserts that Super-Pawn's only chance to viably compete in the Laughlin market is to do business in neighboring Bullhead City.

than is necessary to protect Camco's interests. We agree. The restriction applying to areas "targeted" by Camco for "corporate expansion" is completely unreasonable. We adopt the view that "[t]o be reasonable, the territorial restriction should be limited to the territory in which appellants [(former employers)] established customer contacts and good will." Snelling & Snelling v. Dupay Enterprises, 609 P.2d 1062, 1064 (Ariz. Ct. App. 1980); *see also* Weatherford Oil and Tool Co. v. A.G. Campbell, 327 S.W.2d 76, 77 (Tex. Ct. App. 1959) (holding geographical restriction "in any area where [employer] may be operating or carrying on business" void as unlimited as to territory). Because Camco had no customer contacts or good will established in Bullhead City and had not signed a lease or begun construction of a store in that area, we hold that the non-competition covenant did not apply to Bullhead City.

In light of this court's acknowledgement that non-compete covenants are restraints of trade and subject to careful scrutiny when made in an employment context, we hold that the covenant at issue is overly broad as to future territory for possible expansion. Therefore, even though there was consideration to support the Bakers and Grosses' agreements not to compete with Super-Pawn, we conclude that Camco did not enjoy a reasonable likelihood of success on the merits of its claim, and thus injunctive relief was properly denied. *See* Hotel Riviera, Inc. v. Torres, 97 Nev. 399, 403, 632 P.2d 1155, 1158 (1981) ("If a decision below is correct, it will not be disturbed on appeal even though the lower court relied upon wrong reasons."). Because we conclude that Camco does not enjoy a reasonable likelihood of success on the merits we need not address the issue of irreparable harm.

## *CONCLUSION*

We hold that continued employment is valid consideration for an at-will employee's post-hire agreement not to compete with a former employer, and that the lower court erred in its contrary ruling. However, we also conclude that the provisions at issue are unreasonable in territorial scope and therefore unenforceable as against public policy. Therefore, we affirm the lower court's order denying Camco's motion to enjoin respondents from doing business in Bullhead City, Arizona.